IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

NICHOLE D. WILDE,                             )
                                              )
    Petitioner,                               )   Case No. CV 08-00197-E-REB
                                              )
v.                                            )
                                              )   **MEMORANDUM DECISION**
COMMISSIONER, SOCIAL SECURITY                 )   **AND ORDER**
ADMINISTRATION,                               )
                                              )
    Respondent.                               )
_____)

Now pending before the Court is Nichole D. Wilde's Petition for Review (Docket No. 1), seeking review of the Social Security Administration's decision to deny her claim for disability insurance benefits. The action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  ADMINISTRATIVE PROCEEDINGS

Nichole D. Wilde ("Petitioner") applied for disability insurance benefits on May 16, 2005, alleging disability beginning February 7, 2005. (AR 14, 54-66). Petitioner's claim was initially denied on December 5, 2005 (AR 30-32) and, again, on reconsideration around March 13, 2006 (TR 27). On April 7, 2006, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (AR 34). On May 9, 2007, ALJ G. Alejandro Martinez

**MEMORANDUM DECISION AND ORDER - 1**

held a hearing in Pocatello, Idaho, at which time Petitioner, represented by attorney Jared Ellis, appeared and testified. (AR 14, 393-432). A vocational expert, John F. Hurst, M.S., also appeared and testified during the same May 9, 2007 hearing.

On May 22, 2007, the ALJ issued a decision denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. AR (11-23). Petitioner timely requested review from the Appeals Council on June 6, 2007. (AR 9). On April 4, 2008, the Appeals Council denied Petitioner's request for review, (AR 4-6), making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner timely files the instant action, arguing that the decisions of the ALJ and Appeals Council "are not supported by substantial evidence" and without consideration of "crucial evidence submitted in a timely fashion with regard to the [Petitioner's] impairments." *See* Pet. for Review, p. 3 (Docket No. 1). Specifically, Petitioner asserts that the ALJ (1) failed to provide specific and legitimate reasons for rejecting the opinions of Petitioner's treating physicians; and (2) erred in rejecting Petitioner's testimony. *See* Mem. in Supp. of Pet. for Review, p. 2 (Docket No. 17).[1] Petitioner requests that the Court reverse the ALJ's decision and order the payment of benefits or, alternatively, remand the case for further medical development and proceedings. *See id.* at pp. 2, 4, 19; *see also* Pet. for Review, pp. 4-5 (Docket No. 1).

---

[1] Within her briefing, Petitioner claims that the ALJ erroneously rejected the opinions of Dr. Peter Groom, M.D. and Dr. Joseph Watson, M.D. *See* Mem. in Supp. of Pet. for Review, pp. 10-17. However, Petitioner's Petition for Review (Docket No. 1) asserts the ALJ erred only with respect to Dr. Watson, without any reference to Dr. Groom. *See* Pet. for Review, pp. 3-5 (Docket No. 1). Moreover, Petitioner does not raise any objection to the ALJ's handling of her own testimony within the Petition for Review (Docket No. 1). *See id.* Regardless, the Court will consider each of these alleged shortcomings in this Memorandum Decision and Order.

**MEMORANDUM DECISION AND ORDER - 2**

## II.  STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon Petitioner to establish an entitlement to disability benefits.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  In evaluating the evidence at an administrative hearing, the ALJ must follow a five-part sequential process.  20 C.F.R. §§ 404.1520, 416.920.  Notably, the second part of that process involves a determination of whether the claimant has a "severe impairment."  20 C.F.R. § 416.905(a).  If no "severe" impairment is found, the claimant will be found not to be disabled for the purpose of conferring benefits.  20 C.F.R. §§ 404.1520(c), 416.920(c).

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  The ALJ's findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

**MEMORANDUM DECISION AND ORDER - 3**

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.  *See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III.  DISCUSSION

**A.      Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a five-step sequential process in determining whether a person is disabled within the meaning of the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is defined as

**MEMORANDUM DECISION AND ORDER - 4**

work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaging in SGA, the analysis proceeds to the second step. Here, the ALJ concluded that Petitioner has not engaged in SGA after her alleged onset date. (AR 16).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: polyarthropathy and obesity. (AR 16).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part

404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id.* Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. (AR 16-17).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. Further, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the residual functional capacity to perform sedentary work and, therefore, is capable of performing past relevant work as a support analyst. (AR 17-23).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v),

**MEMORANDUM DECISION AND ORDER - 6**

416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled.  Here, the ALJ found that Petitioner is capable of performing her past relevant work and, thus, did not address whether Petitioner is able to do other work.  (AR 23).

**B.**     **Analysis**

Petitioner challenges the ALJ's denial of disability benefits in two separate respects.  First, Petitioner argues that the ALJ improperly rejected the opinions of Petitioner's treating physicians, Drs. Groom and Watson.  *See* Mem. in Supp. of Pet. for Review, pp. 10-17 (Docket No. 17).  Second, Petitioner argues that the ALJ did not provide clear and convincing evidence for rejecting her own testimony.  *See id*. at pp. 17-18.

      1.          Petitioner's Medical Providers' Opinions

The ALJ rejected the medical opinions that suggested Petitioner maintained a covered disability, even though those opinions originated from Petitioner's treating physicians.  The ALJ relied instead on the objective medical evidence of record, including evidence from Petitioner's other medical providers.  (AR 22).

The Ninth Circuit has held that a treating physician's medical opinion is entitled to special consideration and weight.  *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989).  The treating physician's opinion is given that deference because "he is employed to cure and has a greater opportunity to know and observe the individual."  *Id*.  Where the treating physician's opinions are not contradicted by another doctor, it may be rejected only for clear and convincing reasons.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Even if the treating physician's opinions are

**MEMORANDUM DECISION AND ORDER - 7**

contradicted by another doctor, they can only be rejected if the ALJ provides specific and legitimate reasons, supported by substantial evidence in the record for doing so. *Id*. Regardless, a treating physician's opinion on the ultimate issue of disability is not conclusive. *Rodriguez*, 876 F.2d at 762 (citations omitted); *see also* SSR 96-5P, 1996 WL 374183, *2 ("The regulations provide that the final responsibility for deciding [whether an individual is 'disabled' under the Act] . . . is reserved to the Commissioner."); 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability.").

Therefore, merely concluding that a particular physician is a treating physician does not mandate the adoption of that physician's opinions. In addition to the standard outlined above, treating physicians' opinions are given less weight if they are inconsistent with the record as a whole or if the conclusions consist of vague, conclusory statements unsupported by medically acceptable data. *Stormo v. Barnhart*, 377 F.3d 801, 805-06 (8th Cir. 2004); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (lack of objective medical findings, treatment notes, and rationale to support treating physician's opinion is sufficient reason for rejecting that opinion).

      *a.*    Dr. Groom

On or around January 26, 2006, Dr. Groom completed a "Residual Functional Capacity Questionnaire." (AR 347-349). Based on the record, Dr. Groom apparently saw Petitioner five times before completing the questionnaire - June 17, 2005; July 5, 2005; November 1, 2005;

**MEMORANDUM DECISION AND ORDER - 8**

January 20, 2006; and January 26, 2006. (AR 352-354).[2] The questionnaire revealed, among other things, that Petitioner (1) needed to lay down or recline for six hours in an eight-hour workday; (2) could sit for 30 minutes at a time for up to two hours in an eight-hour workday; (3) could stand/walk for ten minutes at a time for up to one hour in an eight-hour workday; (4) needed to take unscheduled, hour-long breaks every 15-20 minutes; and (5) would be absent from work more than four times a month. (AR 347-348).

Dr. Groom's simultaneous assessment that Petitioner experienced these same limitations since 1994 (AR 349) casts a pall over the entirety of his opinions. Notwithstanding the complete absence of any evidence suggesting a relationship between Petitioner and Dr. Groom before June 17, 2005 (*see supra* at p. 8), Petitioner's admitted work history is unequivocally at odds with such an extreme limitation. For example, Petitioner's work history report (AR 103-110) reveals the following:

- In 1994, Petitioner worked for the Idaho State Veterans Home. There, she walked, stood, stooped, knelt, and crouched for eight hours a day, while frequently lifting more than 100 pounds. (AR 105).

- Also in 1994, Petitioner worked for Westmont Home Health. There, she walked, stood, knelt, and crouched for eight hours a day; at times sitting up to three hours a day. Further, Petitioner frequently lifted up to 25 pounds. (AR 106).

- In 1995 and 1996, Petitioner worked for Winchester Street Market. There, she spent hours a day walking, standing, and stooping, while crouching two hours a day. Petitioner also frequently lifted less than ten pounds. (AR 107).

---

[2] It is unclear when, exactly, Dr. Groom began treating Petitioner given that he appears to state that he has treated Petitioner *since* June 17, 2008 - two and one-half years *after* he even completed the questionnaire. (AR 349).

**MEMORANDUM DECISION AND ORDER - 9**

- Also in 1996, Petitioner worked for Subway.  There, she walked and stood for eight hours a day, while stooping three hours a day and crouching two hours a day.  Petitioner also frequently lifted less than ten pounds.  (AR 108).

- Also in 1996, Petitioner worked for Round Table Pizza.  There, she walked and handled big objects for eight hours a day, stood for one hour a day, and sat/crouched for two hours a day.  Petitioner also frequently lifted less than ten pounds.  (AR 109).

- From 1996 to 2002, Petitioner worked at the Seven Feathers Hotel and Casino.  (AR 103).[3]

- From 2002 to 2004, Petitioner worked for Dell Computers.  (AR 103).

- In 2004, Petitioner worked for Comspan USA.  (AR 103).

- In 2004, Petitioner worked for Cardinal Services, Inc.  (AR 103).

- In 2004 and 2005, Petitioner again worked for Dell Computers.  (AR 103).

Consistent with her work history, Petitioner's claimed onset date of February 7, 2005 further compromises Dr. Groom's opinion that Petitioner experienced such limitations and restrictions beginning in 1994 - 11 years prior.

Moreover, despite outlining Petitioner's limitations in January 2006 (including an inability to walk more than one-half block without rest or "severe pain" (AR 347)), four months later, Dr. Groom refused to issue her a handicap parking placard, believing that she should "do more walking."  (AR 375) ("[Petitioner] wants me to fill out a handicap parking sticker for her, but I refused.  I think she needs to do more walking.").  In short, Dr. Groom's answers to Petitioner's counsel's questionnaire do not coincide with his subsequent diagnostic actions.

---

[3] Petitioner's Work History Report allows for the inclusion of more job-related information (hours walking, sitting, standing, etc.) for only six job titles.  Therefore, while it is clear that Petitioner worked at various jobs between 1996 and 2005, the specific job-related information is unknown.

**MEMORANDUM DECISION AND ORDER - 10**

While not commenting here on whether, in fact, Petitioner is disabled, it must be acknowledged that Dr. Groom's input on the questionnaire is not without some degree of ambiguity which, in turn, jeopardizes its credibility.  The confusing and incorrect treatment history (*see supra* at fn. 2, p. 9), the reference to Petitioner's disabling condition dating back to 1994 while disregarding Petitioner's work history during that same time (*see supra* at pp. 9-10), and the internally inconsistent treatment notes (*see supra* at p. 10) combine to create substantial evidence of the clear and convincing reasons for rejecting Dr. Groom's opinions as outlined in the questionnaire.  *See Tonapetyan*, 242 F.3d at 1144, 1149; *see also infra* at pp. 12-14.

      b.      Dr. Watson

At Exhibit 16F, Dr. Watson's April 11, 2007  PMR Residual Functional Capacity Questionnaire indicates that Petitioner suffers from polymyalgia rheumatica with cardiopulmonary involvement.  (AR 387).  Likewise, Dr. Watson concluded that Petitioner (1) cannot walk without rest or severe pain; (2) can sit for only 30 minutes at a time for less than two hours a day; (3) can stand for only ten minutes at a time for less than two hours a day; (4) must sit in a recliner or lie down for four hours each day; (5) would need to take several unscheduled breaks throughout the day lasting in excess of two hours apiece; (6) could not work; (7) has significant limitations in doing repetitive reaching, handling, or fingering; and (8) would need to be absent from work more than four times a month.  (AR 387-389).  The ALJ disagreed with Dr. Watson's findings.  (AR 22).

According to a separate Onset Date Questionnaire, Dr. Watson apparently began treating Petitioner in August 2006, basing his medical opinions on "direct observation/treatment[,] physical examination[,] clinical testing[,] patient report[, and] laboratory results."  (AR 390).

**MEMORANDUM DECISION AND ORDER - 11**

However, noticeably absent from the entire record are any historical treatment notes from Dr. Watson tracking his observations, examinations, testings, reports, or results.[4] Indeed, when given the opportunity to disclose his clinical findings[5] within the PMR Residual Functional Capacity Questionnaire, Dr. Watson did not. (AR 389). Without supporting medical evidence in the record that substantiates Petitioner's condition, Dr. Watson's opinions cannot be validated. *See Stormo*, 377 F.3d at 805-06 (treating physician's opinions given less weight if conclusions consist of vague, conclusory statements unsupported by medically acceptable data)

Contrasting the lack of treatment notes supporting Dr. Watson's opinions, other evidence in the record exists to question the severity of Petitioner's alleged disability. For example, Dr. Ananda Walaliyadda, M.D., opined in 2005:

> The initial evaluation consisted of an ANA and an extractible nuclear antigen panel. She has all these tests return negative. Her rheumatoid factor and anti-CCP antibody were also negative. She has a low normal ferritin level. Her hepatitis B and C serologies are normal. Her quantitative immunoglobulins at this point are within normal limits. Her serum complement levels are within normal limits, except for mildly elevated C4, which is of no clinical significance. She also had viral titers for parvovirus B19, which was within normal limits. X-ray evaluation does not show evidence of periarticular osteopenia or erosions.

(AR 309); *see also* (AR 314) (MRI results indicating "[n]o radiographically evident osteoarthritic changes of the hands, wrists, or the feet.") The lack of medical evidence

---

[4] Dr. Watson appeared to order but two tests, dated September 29, 2006 and January 1, 2007. *See* Resp.'s Brief, p. 10 (Docket No. 19) (citing (AR 374)). Dr. Watson thereafter diagnosed Petitioner with hypothyroidism and rheumatism not otherwise specified. *Id.*

[5] At Query No. 6, the PMR Residual Functional Capacity Questionnaire defines "clinical findings" as "all laboratory [and] test results which show your patient's medical impairments." (AR 389).

**MEMORANDUM DECISION AND ORDER - 12**

supporting Petitioner's alleged disability was again shared by Dr. Sarah Agsten, D.O., when she stated in no uncertain terms: "I don't have any objective lab data or in review, any objective physical examination findings to determine why [Petitioner] should not be working."  (AR 249). Finally,[6] while recognizing Petitioner's physical limitations, Dr. Mary Himmler, M.D., concluded that Petitioner (1) "ambulates without assistance or assistive device;" (2) "should be able to travel independently;" (3) "is able to sit for long periods of time;" and (4) registers motor strength as 4/5 with "[n]o particular sensory, motor or reflex deficits appreciated otherwise."  (AR 335).

Simply put, there is no question that Petitioner suffers from several severe impairments (acknowledged by the ALJ (*see supra* at p. 5)) that no doubt impact her ability to work; however, it cannot be said, as Petitioner's counsel does, that the "ALJ failed to provide specific legitimate reasons . . . for rejecting [Dr. Groom's and Dr. Watson's opinions.]"  *See* Mem. in Supp. of Pet. for Review, p. 9 (Docket No. 17).  While these physicians' assessments may not have been given the weight Petitioner would have preferred, they were not given independent of the surrounding medical record.  That is, in addition to Drs. Groom's and Watson's opinions being internally inconsistent, they are contradicted by other medical providers.

At this stage of the proceedings, it is not this Court's duty to resolve the conflicting opinions and ultimately decide whether Petitioner is once-and-for-all disabled as that term is

---

[6] It is also worth mentioning that, in addition to conflicting opinions from Drs. Walaliyadda, Agsten, and Himmler, Dr. Groom's opinions do not entirely square up with Dr. Watson's opinions.  For instance, Dr. Watson believes that Petitioner cannot walk without any rest or severe pain (AR 389) while Dr. Groom denied Petitioner a handicap parking placard because he thinks she needs to walk more (*see supra* at p. 10 (citing (AR 375)).  Further, Drs. Groom and Watson appeared to disagree on whether Petitioner met certain A Criteria and B Criteria when assessing inflammatory arthritis.  (AR 350, 391).

**MEMORANDUM DECISION AND ORDER - 13**

used within the Social Security regulations. Rather, this Court is tasked with determining whether the ALJ's decision in determining that Petitioner is not disabled as of February 7, 2005 is supported by the record. With this in mind, given the conflicting medical opinions, the ALJ need only offer specific and legitimate reasons, supported by substantial evidence in the record, for rejecting Drs. Groom's and Watson's medical opinions. *See supra* at pp. 7-8. Because the evidence can reasonably support the ALJ's conclusion in these respects,[7] this Court will not substitute its judgment for that of the ALJ's. *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.

    2.    <u>Petitioner's Credibility</u>

Petitioner also takes issue with the ALJ's conclusion that Petitioner's testimony concerning the intensity, persistence and limiting effects of her symptoms is not credible. *See* Mem. in Supp. of Pet. for Review, pp. 17-18 (Docket No. 17). As the trier of fact, the ALJ is in

---

[7] The Court is less persuaded by the ALJ's perception that Petitioner relied only on over-the-counter medication to control her pain. (AR 22). While it is true that Petitioner attempted to relieve her alleged pain through the use of over-the-counter medication, as Petitioner argues, the record supports a much broader prescription of pain medication. At one point or another, Petitioner was prescribed, took, or considered taking the following non-exhaustive list of pain medication: darvocet, dilaudid, toradol, vicodin, percocet, plaquenil, piroxicam, medrol, ultram, oxycodone, and hydrocodone. As identified in the record, Petitioner's addiction fears and/or an inability to fund such medication justifies her use of more conservative approaches; at the very least, under these circumstances, it should not operate as a *de facto* indication that she is not disabled. *See* Reply, p. 4 (Docket No. 20) (citing *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("Where a claimant provides evidence of a good reason for not taking medication for her symptoms, her symptom testimony cannot be rejected for not doing so. Thus, the fact that [the claimaint] was not taking medication is not a clear and convincing reason for discrediting her symptom testimony." (Internal citation omitted))). Still, Petitioner's alleged condition - even when considering the ALJ may be incorrect as to the issue of Petitioner's ability to control her pain with conservative treatment - is not supported by the medical record nonetheless. *Cf. Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (decision of ALJ will not be reversed for errors that are harmless (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991))).

**MEMORANDUM DECISION AND ORDER - 14**

the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight. *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990). In evaluating a claimant's credibility, the ALJ may consider claimant's reputation, inconsistencies either in testimony or between testimony and conduct, daily activities, past work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Light v. Social Security Admin.*, 119 F.3d 789, 791 (9th Cir. 1997). In short, "[c]redibility decisions are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). It should be noted, however, that to reject a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

At the administrative hearing, Petitioner testified that, as a result of her alleged disability, she (1) cannot brush her hair or complete other personal hygiene tasks; (2) cannot use the restroom without assistance; (3) has excruciating pain in her joints; (4) cannot completely care for her children; (5) cannot perform basic household chores; and (6) has difficulty driving and/or being a passenger in a car. *See* Mem. in Supp. of Pet. for Review, p. 21 (citing (AR 409-411)).[8]

---

[8] Petitioner specifically testified:

> I experience excruciating pain. There is days when my husband has to help me use the restroom because I can't. I am so stiff I can't turn to wipe myself. I can't brush my hair. There is days that it hurts so bad to lay on either side o[f] my back that I got to lay down on the Lazy Boy. You know, it's really hard to tell your kids, I'm sorry, I can't go to your ball game, because I can't sit in a chair long enough or stand. It's really frustrating. I feel like I'm a prisoner in my own home and I want to work. I want to get better so I can work but I can't, you know. I have never been not working. I have never wanted to be – I love my kids but I'm not a homebody. I want to work, but I just can't do it the pain is so bad . . . .

(AR 409).

**MEMORANDUM DECISION AND ORDER - 15**

The ALJ ultimately discounted Petitioner's testimony, finding that "the claimant's complaints far exceed any acceptable, objective medical evidence of a physical source for the degree of impairments alleged. (AR 20). It is true that the objective medical evidence cuts against Petitioner's subjective statements of the pain she suffers (*see supra* at pp. 11-14), however that is not enough to reject outright Petitioner's complaints. *See, e.g.*, *Marshall v. Heckler*, 731 F.2d 555 (8th Cir. 1984) (ALJ may not reject subjective complaints solely because of lack of objective medical evidence).

Among the factors the ALJ acknowledged he must *also* consider when assessing Petitioner's credibility are: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. (AR 19-20) (citing 20 C.F.R. § 404.1529(c)). Here, in addition to examining the medical record, the ALJ questioned Petitioner's credibility – considering her medical treatment regimen too "conservative" and her daily living activities inconsistent with her alleged limitations. (AR 20-21). The Court does not share the ALJ's perspective in this limited respect.

First, as previously discussed, it cannot be said that Petitioner's pain could be treated with only over-the-counter medication. *See supra* at n. 7, p. 14. Petitioner was not only *prescribed*

**MEMORANDUM DECISION AND ORDER - 16**

more aggressive pain medication, she offered two legitimate reasons for not always taking what she was prescribed: (1) she did not want to become addicted, and (2) she could not always afford the expense. (AR 256, 258, 408, 410); *see also supra*, at n. 7, p. 14. Therefore, the ALJ's reliance on this aspect is misplaced and short-sighted; it should not operate as a convincing reason to reject Petitioner's credibility.

Second, the ALJ relies on Exhibit 9E - Function Report-Adult - to conclude that Petitioner is "capable of getting her children prepared for school, she helps with meal preparation, she does light household chores, she drives, she grocery shops weekly, she regularly socializes with family and friends and she watches movies." (AR 21). According to the ALJ, these activities of daily living are "not indicative of a totally disabled individual but rather of one who could perform at least the sedentary work suggested by the vocational expert." *Id*. However, a closer examination of the same Exhibit 9E reveals a different reality:[9]

- After driving her kids two blocks to the bus stop, Petitioner must then lay down to relieve her pain. (AR 134).

- Petitioner's husband helps with washing her own hair. (AR 127).

- Petitioner has problems gripping spoons, forks, and cutting meat. *Id*.

- Petitioner "has problem wiping after BM due to stiffness in back." *Id.*

- Petitioner seldom brushes her teeth due to her being unable to grip a toothbrush. *Id*.

- When not eating fast food or TV dinners, it takes Petitioner all day to prepare food/meals. (AR 128).

---

[9] Still, even if true, Petitioner's potential ability to engage in sporadic activities does not necessarily support a finding that she can engage in regular work activities. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (disability claimants should not be penalized for attempting to lead normal lives in face of their limitations).

**MEMORANDUM DECISION AND ORDER - 17**

- Petitioner's family and friends come over to do yard and house work. *Id.*

- When shopping, Petitioner must use a scooter to navigate efficiently the store's aisles. (AR 129, 132).

- Petitioner can no longer regularly engage in her hobbies and interests. (AR 130).

- Due to her alleged disability, she goes "nowhere" on a regular basis. *Id.*

These alleged physical difficulties were reiterated by Petitioner's cousin, Marie Hayes. (AR 151-153).[10] While Ms. Hayes is no medical expert, her insight into Petitioner's daily activities is relevant given the ALJ's reliance on such select matters when dismissing Petitioner's credibility.

As with Petitioner's alleged disability (*see supra* at pp. 13-14), it is not for this Court to resolve the question of Petitioner's credibility; rather, it is tasked with reviewing the basis of the ALJ's decision on that issue. While Petitioner may very well not be disabled, to the extent the ALJ's conclusion in that respect was based on his credibility determination (*see* (AR 19-21)), the specific rationale offered for questioning Petitioner's credibility is not clear and convincing. The action is therefore remanded to allow the ALJ to revisit this discrete issue and, in turn, determine its effect, if any, on Petitioner's disability determination.

## IV. CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at

---

[10] As examples of Petitioner's physical condition, Ms. Hayes's stated: "she used to like to go for rides in the car to look at the scenery and that isn't even an option" (AR 151); "it is a struggle for her to get up and do simple stuff like fix lunch or do the dishes with the dishwasher" (*id.*); "I had to help [her] wash her hair because she couldn't grip the shampoo bottle and her arms would get extremely tired when washing her hair" (*id.*); "[when] she tries to cook a home cooked meal she ends up having to sit on a chair and take most of the afternoon to prepare a meal that should take 20 minutes" (*id.*); "[she] is unable to stand long enough to sweep and mop the floor" (AR 152); and "[s]he can't fold the clothes and right now she tries to do the laundry however she ends up not getting it done" (*id.*).

**MEMORANDUM DECISION AND ORDER - 18**

1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

As to the ALJ's consideration of Dr. Groom's and Dr. Watson's opinions concerning Petitioner's alleged physical condition, the evidence upon which the ALJ relied can reasonably and rationally support his well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation by others.

However, the reasons given by the ALJ in support of his determination that Petitioner's complaints are not fully credible are not sufficiently clear and convincing and, therefore, not supported by substantial evidence in the record.  It is for this reason that it is necessary to remand this action for further consideration by the ALJ.

## V.  ORDER

Based on the foregoing, Petitioner's request for review is GRANTED.  The Commissioner's decision that Petitioner's subjective complaints are not credible is not sufficiently clear and convincing; therefore, this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

DATED: **April 15, 2009**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge